**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SOFTWRITERS, INC., | |
| Plaintiff, | Civil Action No. 2:15-cv-01286-LPL |
| v. | <u>JURY TRIAL DEMANDED</u> |
| | *Electronically Filed* |
| INTEGRA, INC. and JM SMITH CORP., | |
| Defendants. | |

**SOFTWRITERS' BRIEF IN SUPPORT OF ITS MOTION FOR A TEMPORARY**
**RESTRAINING ORDER, TO SET A PRELIMINARY INJUNCTION HEARING DATE,**
<u>**AND FOR EXPEDITED DISCOVERY**</u>

Cecilia R. Dickson
PA ID No. 89348
CDickson@webblaw.com
Paul M. Resnick
PA ID No. 46981
PReznick@webblaw.com

THE WEBB LAW FIRM, P.C.
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA  15222
Telephone:  (412) 471-8815
Facsimile:  (412) 471-4094

Thomas G. Pasternak (admitted pro hac vice)
IL Bar No. 6207512
STEPTOE & JOHNSON LLP
115 South LaSalle, Suite 3100
Chicago, Illinois 60603
Telephone:  (312) 577-1300
Facsimile:  (312) 577-1365
Email:  tpasternak@steptoe.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................1

ARGUMENT...........................................................................................................................5

I.    INTEGRA'S MISAPPROPRIATION OF SOFTWRITERS' TRADE SECRETS
      SHOULD BE TEMPORARILY RESTRAINED. ...................................................................5

      A.    Legal Standard ............................................................................................................5

      B.    Likelihood of Success on the Merits............................................................................6

      C.    Likelihood of Irreparable Harm ...................................................................................8

      D.    Balance of the Hardships ..............................................................................................8

      E.    Public Interest ...............................................................................................................9

      F.    The Court Should Grant Narrow Relief........................................................................9

II.   THE COURT SHOULD SET A DATE FOR A PRELIMINARY INJUNCTION
      HEARING...............................................................................................................................10

III.  THE COURT SHOULD ALLOW EXPEDITED DISCOVERY .........................................10

IV.   CONCLUSION.......................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Babn Technologies Corp. v. Bruno*,
No. Civ.A. 98-3409, 1998 WL 720171 (E.D. Pa. Sept. 2, 1998) ..............................................5

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*,
456 F. App'x 184, 188 (3d. Cir. 2012) .................................................................................5, 9

*Bimbo Bakeries USA, Inc. v. Botticella*,
613 F.3d 102 (3d Cir. 2010)......................................................................................................9

*Brandt v. Burwell*,
43 F. Supp. 3d 462, 493 (W.D. Pa. 2014).................................................................................8

*Campbell Soup Co. v. ConAgra, Inc.*,
977 F.2d 86 (3d Cir. 1992).......................................................................................................8

*Conestoga Wood Specialties Corp. v. Secretary of Health & Human Services*,
No. 13-1144, 2013 WL 1277419 (3d Cir. Feb. 8, 2013) .........................................................9

*Constructors Association v. Kreps*,
573 F.2d 811 (3d Cir. 1978)......................................................................................................9

*Exclusive Supplements, Inc. v. Abdelgawad*,
Civ. Action No. 12-16522013, WL 160275 (W.D. Pa. Jan. 15, 2013)...................................11

*Fonovisa, Inc. v. Does 1–9*,
Civil Action No. 07-1515, 2008 WL 919701 (W.D. Pa. Apr. 3, 2008)............................10, 11

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
Civ. Action No. 11-465-LPS-LJB, 2011 WL 4478477 (D. Del. Sept. 26, 2011)....................10

*McCullough v. Miller*,
Civil Action No. 06-514, 2007 WL 4191974 (W.D. Pa. Nov. 21, 2007) ................................5

*Samuel, Son & Co., Inc. v. Beach*,
Civ. Action No. 13-128 Erie, 2013 WL 4855325 (W.D. Pa. Sept. 11, 2013) ...................10, 11

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002)............................................................................................10

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982)..................................................................................................................8

**STATUTES**

12 Pa.C.S. §5302.................................................................................................................6, 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(d)(1)..........................................................................................................10

## INTRODUCTION

Like a thief in the night, Integra, Inc. ("Integra") has broken into its competitor SoftWriters, Inc. ("SoftWriters") and gained access to the valuable trade secrets that make up the heart of SoftWriters' business. Integra's intentional and illicit access to SoftWriters' entire FrameworkLTC® software and database, which is continuing, has caused and will continue to cause irreparable harm to SoftWriters unless it is stopped immediately. For that reason, SoftWriters seeks a temporary restraining order, a preliminary injunction hearing date, and limited expedited discovery. All of the factors that the Court must consider here (likelihood of success, irreparable harm, balance of the hardships, and public interest) weigh in favor of granting SoftWriters' relief. This motion is supported by the affidavit of Timothy Hutchison, President and CEO of SoftWriters (Hutchison Aff., Exhibit A).

## STATEMENT OF FACTS

SoftWriters is a leading software licensor in the long-term pharmacy market. Its flagship product is called FrameworkLTC®. The FrameworkLTC® product is a total pharmacy management software solution created specifically for the unique processes of pharmacies servicing long term care facilities, assisted living facilities, group homes and the like. The FrameworkLTC® software stores information in a relational database. The design and structure of the database, along with the software contained in it, are of SoftWriters' own design and constitute valuable trade secrets. (Hutchison Aff., ¶ 2).

SoftWriters' licensees obtain the right to use the FrameworkLTC® software by entering into a Single Pharmacy FrameworkLTC® Software License and Maintenance Agreement ("License Agreement"), the terms of which a) expressly acknowledge that the FrameworkLTC® software is and contains SoftWriters' confidential and proprietary and trade secret information,

and b) prohibit licensees from allowing any third party access to the FrameworkLTC® software.

More specifically, License Agreement §2.b. provides:

> *Restrictions on Use*: … Licensee may not … in any way allow any third party (including without limitation any parent, subsidiaries, affiliated entities of third parties of Licensee) access to or  use any of the Software or allow access to any of the Software through any terminal located outside of Licensee's Site.

And License Agreement §6.a provides:

> *Licensor Confidential Information*:   Licensee agrees the Licensor Confidential Information contains confidential and proprietary information, including without limitation trade secrets and know-how, all of which is the exclusive property of Licensor.  During the period this Agreement is in effect and at all times thereafter, Licensee and its employees, agents, representatives and contractors shall maintain the confidentiality of the Licensor Confidential Information and not sell, license, publish, display, disclose or otherwise reveal or make available any of the Licensor Confidential Information to any third party …

(Ex. B; Hutchison Aff., ¶ 3).

Integra is also a software licensor in the long-term pharmacy market.  It has a product called DocuTrack, which is a document management system that is marketed and licensed to the same market segments as SoftWriters' FrameworkLTC® software.  Additionally, Integra has developed a product called Nextra to compete directly with the FrameworkLTC® software. (Hutchison Aff., ¶ 4).

In January 2015, Integra released the eRx Module ("eRx Module") as part of DocuTrack. According to Integra's website, the eRx Module is designed to give pharmacies control over how they receive and process electronic prescriptions.  In late August, a SoftWriters licensee informed SoftWriters that Integra was directly accessing the SoftWriters FrameworkLTC® proprietary database via the eRx Module.  SoftWriters at no time has afforded or permitted Integra any right of access to its proprietary FrameworkLTC® software.  In order for Integra to gain access, it had to obtain login credentials from a SoftWriters licensee, and be provided access

to the database from the licensee's computer network.  As discussed above, licensees are prohibited contractually from providing such access. (Hutchison Aff., ¶ 5)

By accessing the SoftWriters' FrameworkLTC® database, Integra has gained access to SoftWriters' confidential trade secret information.  This access gives Integra visibility to the entire FrameworkLTC® product and enables it to examine how the product is built from the ground up, as well as to gain SoftWriters' market intelligence.  Integra has that access today, and has refused to cease such access.  Each day that goes by with Integra utilizing such illicit and ongoing access leaves SoftWriters' confidential trade secret information exposed and open to analysis and use by its competitor, Integra, which could include use in the development of Integra's Nextra product, causing further damage to SoftWriters.  It is therefore imperative that it be stopped immediately.

SoftWriters' risk of irreparable harm has substantially increased with JM Smith Corporation's ("Smith") recent acquisition of Integra.  Smith-subsidiary  QS/1, now an Integra affiliate, offers a product that  directly competes with SoftWriters' FrameworkLTC® product.  Every day that goes by the risk increases that Integra will share its misappropriated SoftWriters' trade secrets with its affiliate QS/1.

As soon as it became aware of Integra's illicit access and ongoing ability to access SoftWriters' software, SoftWriters took action.  On September 1, 2015, SoftWriters' parent company Roper Technologies, Inc. wrote Integra and demanded, among other things, that it cease and desist accessing SoftWriters' FrameworkLTC® database.  Specifically, it demanded that Integra:

> 1) Immediately cease and desist accessing SoftWriters' databases and destroy all data, software, related documentation, any copies thereof and any other SoftWriters information in its possession, custody or control;

2) Immediately remove the eRx Module from DocuTrack for purposes of destroying any Integra source code developed for the module using SoftWriters' design data; and

3)  Cease holding itself out as being affiliated with SoftWriters in any way.

Exhibit C.

Integra refused to take any action.  Exhibit D.

In an effort to prevent Integra from continuing to improperly access its trade secrets, SoftWriters created an upgrade (the "Upgrade"), which, when installed by its licensees, encrypts their data that SoftWriters believed was being accessed by Integra's eRx Module.  SoftWriters was within its rights to create and provide licensees with the Upgrade.   Installation of the Upgrade encrypts the data contained in the database, but cannot prevent further access by Integra to the database.  Therefore, the design and architecture of the database, as well as the software contained in the database, remain exposed.  Moreover, the Upgrade cannot recover any copies or excerpts that Integra has taken of SoftWriters' trade secrets by virtue of its unlawful access. Integra still is making use of its improper access.  (Hutchison Aff., ¶ 6)

In late September, Integra responded to the Upgrade by wrongly telling SoftWriters' licensees not to install the Upgrade because it would "break" the eRx module if installed and that the purpose of the Upgrade was to force licensees to use SoftWriters' product.  On information and belief, this communication was issued with the express purpose of maintaining the ability to unlawfully access SoftWriters' trade secrets.  (Hutchison Aff., ¶ 7)

Most recently, numerous SoftWriters licensees have confirmed that Integra provides hands-on technical assistance to them during set up and configuration of the eRx module to access the FrameworkLTC® database.  It would be impossible for Integra to provide such

- 4 -

service without access to, and knowledge of, SoftWriters' FrameworkLTC® database during those installations.  (Hutchison Aff., ¶ 8)

<u>**ARGUMENT**</u>

**I.      INTEGRA'S MISAPPROPRIATION OF SOFTWRITERS' TRADE SECRETS SHOULD BE TEMPORARILY RESTRAINED.**

Because the circumstances here more than meet the applicable standard, Integra's conduct should be restrained pending a preliminary injunction hearing.  Indeed, every factor weighs in SoftWriters' favor.

**A.      Legal Standard**

In order to obtain a preliminary injunction, the court considers the following factors:

> "(1)    whether the movant has shown a likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the relief is denied; (3) whether granting relief will result in even greater harm to the non-moving party; and (4) whether the public interest favors such relief."

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 F. App'x 184, 188 (3d Cir. 2012).  The same standard applies to a motion for a temporary restraining order.  *McCullough v. Miller*, Civil Action No. 06-514, 2007 WL 4191974, at *1, n.3 (W.D. Pa. Nov. 21, 2007) ("Because the standards for the grant of a preliminary injunction and a temporary restraining [order] are the same, the court's analysis of the preliminary injunction will also dispose of Plaintiff's request for a temporary restraining order.") (citing *Babn Technologies Corp. v. Bruno*, No. Civ.A. 98-3409, 1998 WL 720171, at *3 (E.D. Pa. Sept. 2, 1998) ("The standard for a temporary restraining order is the same as that for a preliminary injunction").

Although SoftWriters' complaint contains four counts, one in the alternative, here immediate relief is sought only for Integra's misappropriation of trade secrets (Count 1), which

has caused and is causing SoftWriters the greatest amount of irreparable harm, with the other counts (Violation of the Lanham Act, Tortious Interference with Contract, and Unfair Competition) to be addressed at the preliminary injunction hearing. *See* Complaint, P.I. x.

**B.      Likelihood of Success on the Merits**

SoftWriters has brought a cause of action under the Uniform Trade Secrets Act and Pennsylvania's Trade Secrets Act. (ECF #1 Complaint, Case No. 2:15-cv-01286-LPL).  Those statutes provide that a trade secret is:

> "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1)  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2)  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

12 Pa.C.S. §5302.

The statutes provide that "misappropriation" is defined as:

> 1)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> 2)  Disclosure or use of a trade secret of another without express or implied consent by a person who:
>     i.    Used improper means to acquire knowledge of the trade secret;
>     ii.   At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>         A.  Derived from or through a person who had utilized improper means to acquire it;
>         B.  Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>         C.  Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>     iii.  Before a material change of his position, knew or had reason to know that it was a trade secret and that

knowledge of it had been acquired by accident or mistake.

Id.

Here there can be no doubt that SoftWriters' FrameworkLTC® database constitutes a trade secret, and that Integra has knowingly misappropriated it. 12 Pa.C.S. §5302. SoftWriters' trade secrets relate to its database architecture, and more particularly the manner in which SoftWriters has created a software solution and database architecture to provide features and functionality that are unique in the industry and that represent a significant market advantage. SoftWriters has spent significant time and money developing its trade secrets and has taken legitimate steps to protect such information from disclosure, including limiting dissemination and access to its trade secrets and creating contractual obligations to prevent further disclosure. (Hutchison Aff. ¶ 9)

There also can be no doubt that Integra misappropriated SoftWriters' trade secrets by virtue of its access to the FrameworkLTC® software. As a competitor in the software market, Integra cannot plausibly plead ignorance with respect to the restrictions placed on SoftWriters licensees regarding third party access to FrameworkLTC®, yet somehow convinced a licensee to provide its network access information and allowed Integra to use that information to obtain access. 12 Pa.C.S. §5302. With that information, Integra accessed and is accessing the software in the guise of assisting SoftWriters with installation of the eRx module. Thus, Integra created a product that customers cannot install on their own, and disingenuously convinced those customers to let Integra access SoftWriters' trade secrets without the customers knowing it. This access is not authorized by SoftWriters and is in violation of the licensee's contractual obligations. As it stands today, Integra has unfettered access to SoftWriters' trade secret database architecture – the core of its business.

### C.      Likelihood of Irreparable Harm

There can be no doubt that SoftWriters has been harmed and will continue to be harmed by Integra's unauthorized access to SoftWriters FrameworkLTC® software.

By accessing the software, Integra has gained access to some of SoftWriters' most valuable trade secrets – the essence of how the SoftWriters' FrameworkLTC® product is designed and operates.  The trade secret information goes to the heart of SoftWriters' business and access to it by a competitor is the definition of irreparable harm.  Here it is even worse for two reasons.  First, Integra is designing a product that will directly compete with SoftWriters' FrameworkLTC®, the Nextra product.  Second, Smith's recent acquisition of Integra makes QS/1, who competes directly with SoftWriters' FrameworkLTC® product, an Integra affiliate. Thus the risk of irreparable harm here is substantial, and stopping it cannot wait.  SoftWriters has well-demonstrated the risk of irreparable harm here:

> "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)).

### D.      Balance of the Hardships

While SoftWriters has suffered and will continue to suffer irreparable harm if Integra is not immediately enjoined, being compelled to obey the law would not harm Integra.

> "The balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public. When evaluating the balance of hardships, the court weighs the irreparable harm plaintiff would suffer absent an injunction against the harm such an injunction would inflict on

defendant." *Brandt v. Burwell*, 43 F. Supp. 3d 462, 493 (W.D. Pa. 2014) (internal quotation marks and citations omitted).

SoftWriters merely seeks to end Integra's access to its trade secrets, which if happens will put Integra in the same place it was before it started its illicit activities.

### E.    Public Interest

The public interest is served by preventing trade secrets misappropriation. "[T]here is a generalized public interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010). Here that public interest is served by granting SoftWriters' relief.

In sum, all four factors the Court must consider in evaluating the need for a Temporary Restraining Order each weigh strongly in SoftWriters' favor. *Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 F. App'x 184, 188 (3d Cir. 2012). And even if the Court finds a factor not to weigh in favor of SoftWriters, a temporary restraining order is still appropriate, as not all the factors have to be met to gain relief:

> "[A]though the four [preliminary injunction] factors provide structure for the inquiry, 'in a situations where factors of irreparable harm, interests of third parties and public considerations strongly favor the moving party, an injunction might be appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required.' " *Conestoga Wood Specialties Corp. v. Secretary of Health & Human Services*, No. 13-1144, 2013 WL 1277419 (3d Cir. Feb. 8, 2013) (quoting *Constructors Association v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978)).

### F.    The Court Should Grant Narrow Relief

For that reason, SoftWriters has narrowly tailored its requested relief to address the present situation. As set forth in the proposed Order filed herewith (Ex. E), first, the Court should order that all direct access by Integra to SoftWriters' FrameworkLTC® product or nay

other product cease.  Second, the Court should order that all SoftWriters' confidential information in Integra's possession, custody or control be destroyed.  Third, and finally, the Court should order that Integra's utility that accesses the FrameworkLTC® database for licensees be deactivated.

## II.    THE COURT SHOULD SET A DATE FOR A PRELIMINARY INJUNCTION HEARING

SoftWriters requests that the Court set a date for a preliminary injunction hearing.

## III.   THE COURT SHOULD ALLOW EXPEDITED DISCOVERY

Federal Rule of Civil Procedure 26 ("Rule 26") authorizes expedited discovery "by court order."  Fed. R. Civ. P. 26(d)(1).  District courts within this circuit have typically 'require[d] the party seeking discovery to show "good" cause for its motion, such that the request is "reasonable" in light of the circumstances.'" *Samuel, Son & Co., Inc. v. Beach*, Civ. Action No. 13-128 Erie, 2013 WL 4855325, at \*3 (W.D. Pa. Sept. 11, 2013) (quoting *Kone Corp. v. ThyssenKrupp USA, Inc.*, Civ. Action No. 11-465-LPS-LJB, 2011 WL 4478477, at \*3–4 (D. Del. Sept. 26, 2011)) (alterations original).  To determine whether there is good cause, a court must consider whether "the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." *Fonovisa, Inc. v. Does 1–9*, Civil Action No. 07-1515, 2008 WL 919701, at \*10, n.22 (W.D. Pa. Apr. 3, 2008) (citing *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).  "Good cause is usually found 'when a party seeks a preliminary injunction, and when physical evidence may be consumed or destroyed with the passage of time, thus causing one or more parties to be disadvantaged.' " *Samuel, Son*, 2013 WL 4855325, at \*3.

SoftWriters meets the "good cause" standard for four reasons.  First, it is seeking a temporary restraining order and, ultimately, a preliminary injunction, to prevent Defendants from

continuing to access and use SoftWriters's confidential, trade secret information. This immediate injunctive relief is necessary because Defendants currently have ongoing access to all of SoftWriters' FrameworkLTC® trade secrets. Expedited discovery is necessary so that SoftWriters can ensure an appropriate preliminary injunction is ordered by the Court for the duration of this litigation.

Second, the primary evidence in this case, brought by one software company against another, will likely be in the form of electronically stored information, such as logs reflecting Defendants' unlawful accessing of SoftWriters products and the copying of trade secrets contained therein. This evidence may easily be "consumed or destroyed with the passage of time," *Fonovisa*, 2008 WL 919701, at *10, n.22, and any delay in discovery therefore will disadvantage SoftWriters.

Third, the prelawsuit correspondence between SoftWriters and Defendants shows that the parties sharply dispute the facts. *See* Exhibit C and Exhibit D. This alone has been held sufficient to warrant expedited discovery. *See Exclusive Supplements, Inc. v. Abdelgawad*, Civ. Action No. 12-16522013 WL 160275, at *1 (W.D. Pa. Jan. 15, 2013) ("Given the wildly divergent factual assertions made by the parties in their filings—as well as the internal inconsistencies sometimes present in those assertions—it is clear that this case would benefit from conducting some discovery prior to the preliminary injunction hearing . . . .").

Fourth, SoftWriters proposes to serve written discovery requests and a deposition notice narrowly tailored to obtain information that would be relevant and material to the preliminary injunction hearing. SoftWriters has drafted all the intended discovery and has attached it to this motion as Exhibits F, G and H. This limited discovery, consisting of 8 requests for production, 8 interrogatories, and a single deposition notice on 7 topics, will not cause Defendants any undue

- 11 -

burden or prejudice.  *See Samuel, Son*, 2013 WL 4855325, at \*5 (finding expedited discovery all the more appropriate when there was "nothing to suggest that Defendants will be prejudiced by a limited period of discovery at this juncture").

## IV.    CONCLUSION

For all these reasons, this Court should (1) grant a temporary restraining order; (2) set a date for a preliminary injunction hearing; and (3) allow expedited discovery before the preliminary injunction hearing.  A proposed Order is attached as Exhibit E.


Dated: October 16, 2015                           */s/ Thomas G. Pasternak*

Cecilia R. Dickson
PA ID No. 89348
CDickson@webblaw.com
Paul M. Resnick
PA ID No. 46981
PReznick@webblaw.com

THE WEBB LAW FIRM, P.C.
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA  15222
Telephone: (412) 471-8815
Facsimile: (412) 471-4094

Thomas G. Pasternak (admitted pro hac vice)
STEPTOE & JOHNSON LLP
IL Bar No. 6207512
115 South LaSalle, Suite 3100
Chicago, Illinois 60603
Telephone: (312) 577-1300
Facsimile: (312) 577-1365
Email:  tpasternak@steptoe.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 16, 2015, a true and correct copy of the foregoing

document has been served on all counsel of record via the Court's ECF system and via email at

the address below.

Anuj Desai
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, Georgia 30363
anuj.desai@agg.com


/s/ *Thomas G. Pasternak*
COUNSEL FOR PLAINTIFF
SoftWriters, Inc.

- 13 -